UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SEAN ASHMAN,

     Petitioner,

v.                                    Case No. 8:05-cv-31-T-26TBM

JAMES V. CROSBY, JR.,

     Respondent.

_____/

## O R D E R

     Before this Court is Petitioner's  petition for writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254, and supporting memorandum of law (dkts. 1 & 2), Respondent's response to the petition and exhibits, including the record on appeal (dkts. 13 & 14 (appendix)), and Petitioner's amended reply to the response (dkt. 21), exhibits (dkt. 22), supplement to amended reply (dkt. 24), and supplemental exhibits (dkt. 27).

## PROCEDURAL HISTORY

     The petition attacks Petitioner Sean Ashman's convictions for armed kidnaping. sexual battery with a deadly weapon, and attempted felony murder arising from the Tenth Judicial Circuit in Polk County, Florida, in state circuit case number CF02-08268A1-XX.  On January 10. 2003. Petitioner was charged by Information with one count of armed kidnapping, five counts of sexual battery with force or deadly weapon, and one count of attempted felony murder.  The

offenses occurred on December 2, 2002. (V1:R 27-30.)[1]  The case proceeded to a jury trial on

April 7, 2003.  The jury found Petitioner guilty of all seven counts as charged.  (V1: R 43-49.)

On May 19, 2003, the court adjudicated Petitioner guilty and sentenced him to six life sentences

with the life sentence for Count I to run consecutively to the concurrent life sentences imposed in

the five sexual battery counts.  Petitioner was sentenced to a concurrent term of 30 years for the

attempted felony murder charge in Count V.  (V1: R 85-93.)

Petitioner pursued a direct appeal where he was represented by the special assistant public

defender.  He filed an initial brief, raising the following two issues:

Issue I

THE TRIAL COURT ERRONEOUSLY DENIED A MISTRIAL BASED UPON
THE INTRODUCTION OF INFLAMMATORY CHARACTER EVIDENCE:
APPELLANT WAS LIKE OSAMA BIN LADEN; and

Issue II

THE TRIAL COURT ERRONEOUSLY ADMITTED EVIDENCE THAT
APPELLANT HAD A SKI MASK WHEN HE ALLEGEDLY COMMITTED
THE CHARGED OFFENSES:  THERE WAS NO CONNECTION BETWEEN
THE SKI MASK AND THE CHARGED CRIMES - THE SKI MASK
SUGGESTED THE COMMISSION OF OTHER UNCHARGED OR
UNCOMMITTED CRIMES.

(Dkt. 14, Respondent's Ex. 1.)[2]  The State filed its answer brief, and Petitioner filed a reply brief.

(Exs. 2 & 3.)  On January 23, 2004, in Case No. 2D03-2758, the Second District Court of Appeal

filed an unwritten per curiam opinion affirming Petitioner's convictions and sentences.  (Ex. 4.)

---

[1]  The record on appeal (dkt. 14, ex. 14) consists of six volumes and the Court's citations
to the record will identify the volume number with "V" and the page number with "R."

[2]  Hereafter, the Court's citations to "Ex." refer to Respondent's exhibits included in the
appendix to docket entry 14.

<u>Ashman v. State</u>, 871 So. 2d 218 (Fla. Dist. Ct. App. 2004)[Table].  The court issued its mandate on February 16, 2004.  (Ex. 5.)

On May 3, 2004, Petitioner filed a Motion to Correct Illegal Sentence pursuant to Rule 3.800(a), Florida Rules of Criminal Procedure.  (Ex. 6.)  The trial court summarily denied the motion in an order rendered on June18, 2004.  (Ex. 7.)  The court rejected Petitioner's sole argument regarding the length of sentence and score sheet level stated in the judgment as to the crime of attempted felony murder, pointing out in the order that on July 11, 2003, the typographical error on Petitioner's original judgment and sentencing documents had been corrected to reflect the accurate statute number and offense for which Petitioner had been charged and convicted in Count V.

On May 19, 2004, Petitioner filed a motion for postconviction relief pursuant to Rule 3.850, Florida Rules of Criminal Procedure.  (Ex. 8.)  Petitioner raised 34 grounds for relief in this motion.  On June 21, 2004, the trial court entered an order summarily denying all grounds except for grounds 4(e), 7(d), 7(c)(3), and 8, which were dismissed without prejudice.  (Ex. 9.) The court attached relevant portions of the record which conclusively refute Petitioner's allegations.  Petitioner appealed this adverse ruling along with the denial of his Rule 3.800 motion.  Briefs were not filed by either party.  (Ex. 10.)  On October 6, 2004, in Case No. 2D04-3419, the Second District Court of Appeal filed a <u>per curiam</u> unwritten opinion affirming the trial court's denial of postconviction relief.  (Ex. 11.)  <u>Ashman v. State</u>, 888 So. 2d 28 (Fla. Dist Ct. App. 2004)[Table].  The mandate issued on November 15, 2004.  (Ex. 12.)

## PETITIONER'S FEDERAL HABEAS CLAIMS

The instant federal petition was provided to prison authorities for mailing on January 3,

3

2005, and was timely filed in the Clerk's office on January 5, 2005. (Dkt. 1). The petition

contains seven grounds for relief with numerous sub-claims:

<u>Ground One</u>

CONVICTION OBTAINED BY USE OF A COERCED CONFESSION:

<u>Ground Two</u>

DENIAL OF EFFECTIVE ASSISTANCE OF TRIAL COUNSEL;

<u>Ground Three</u>

CONVICTION OBTAINED BY A VIOLATION OF THE PRIVILEGE
AGAINST SELF-INCRIMINATION:

<u>Ground Four</u>

LACK OF JURISDICTION OF THE COURT TO ENTER JUDGMENT OR
IMPOSE SENTENCE;

<u>Ground Five</u>

CONVICTION OBTAINED BY USE OF EVIDENCE GAINED THROUGH AN
UNCONSTITUTIONAL SEARCH AND SEIZURE:

<u>Ground Six</u>

CONVICTION OBTAINED BY A VIOLATION OF THE PROTECTION
AGAINST DOUBLE JEOPARDY; and

<u>Ground Seven</u>

PROSECUTORIAL MISCONDUCT.

## AEDPA STANDARD OF REVIEW

On April 24, 1996, the President signed into law the Antiterrorism and Effective Death

Penalty Act of 1996 ("AEDPA"). Section 104 of AEDPA amended 28 U.S.C. § 2254 by adding

the following provision:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The record in this cause demonstrates that the state courts' analyses of the merits of Petitioner's claims did not result in the unreasonable application of clearly established Federal law or in an unreasonable determination of the facts of Petitioner's case.

## DISCUSSION

### Grounds One, Three, and Five

Grounds One (coerced confession), Three (violation of privilege against self-incrimination), and Five (unconstitutional search and seizure) are procedurally barred. Under Florida law, the claims raised in these three grounds are the types of issues which should be preserved at trial and raised on direct appeal, rather than through a collateral motion for postconviction relief under Rule 3.850, Florida Rules of Criminal Procedure. Claims that could have been or should have been preserved at trial and then raised on direct appeal and were not are procedurally barred. Sullivan v. Wainwright, 695 F.2d 1306, 1310 (11th Cir.). cert. denied. 464 U.S. 922 (1983). A procedural default occurs when a claim is filed in state court and because the claim could have or should have been raised at an earlier time, the state court refuses to reach the

merits and denies relief on procedural grounds. When this occurs the federal court cannot reach the merits of the claim unless the petitioner can show cause for his state default and prejudice resulting therefrom. Wainwright v. Sykes, 433 U.S. 72 (1977). Claims that are unexhausted and procedurally defaulted in state court are not reviewable by this Court unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation or that failure to consider such allegations will result in a fundamental miscarriage of justice. Id. Petitioner must present his allegations of cause to excuse a clear procedural bar in state court. Murray v. Carrier, 477 U.S. 478 (1986). Cause must ordinarily be something external to the defense. Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995). To show prejudice, he must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152 (1982). Petitioner has not demonstrated cause or prejudice resulting from his failure to raise Grounds One, Three, or Five, and, thus, the claims are due to be dismissed as procedurally barred.

Ground Two

In Ground Two, Petitioner lists 22 separate allegations of ineffective assistance of trial counsel:

1. Counsel was ineffective for failing to suppress or file a motion to suppress evidence (pellet gun) recovered by the victim;

2. Counsel was ineffective for failing to suppress or file a motion to suppress the jailhouse informant's taped statement and to exclude the jailhouse informant as a credible witness;

3. Counsel was ineffective for failing to move for a bond hearing or to seek Petitioner's release from jail on pre-trial release;

6

4. Counsel was ineffective for failing to furnish Petitioner with a copy of the discovery materials in a timely fashion;

5. Counsel was ineffective for failing to investigate key elements contained in the discovery which were crucial in preparing a defense strategy. e.g., police investigative reports. witness statements. etc.;

6. Counsel was ineffective for failing to make adequate visitations to Petitioner while he was incarcerated in the county jail;

7. Counsel was ineffective for failing to subpoena potentially corroborating witnesses for the defense;

8. Counsel was ineffective for failing to review the trial process with Petitioner, such as the jury selection process;

9. Counsel was ineffective for failing to thoroughly research the law on attempted felony murder to discover that this crime is no longer existent;

10. Counsel was ineffective for making inappropriate comments to the jury panel;

11. Counsel was ineffective for indicating to the jury during his voir dire speech that he anticipated his client would testify;

12. Counsel was ineffective for failing to challenge jurors Sherry Finney and Lane Dorminy during jury selection;

13. Counsel was ineffective for advising Petitioner to make admissions regarding certain elements of the alleged crime;

14. Counsel was ineffective for trusting the prosecutor to instruct State witnesses regarding the rule of sequestration;

15. Counsel was ineffective for failing to seek suppression of letters that were written to the victim from Petitioner;

16. Counsel was ineffective for failing to object to the prosecutor's comment about being "stalked" during her opening statement to the jury;

17. Counsel was ineffective for failing to object to the prosecutor mentioning the stalking offense;

18. Counsel was ineffective for having a problem reading the jury panel seating

chart, which resulted in the prosecutor confusing the names of some prospective jurors;

19. Counsel was ineffective for failing to visit Petitioner in jail prior to sentencing or to adequately discuss sentencing issues with his client;

20. Counsel was ineffective for failing to question a State witness as to why she turned over evidence (sexual assault evidence kit) to a law enforcement officer she could not later identify. and for failing to adequately cross-examine the witness;

21. Counsel was ineffective for failing to view certain evidence prior to trial; and

22. Counsel was ineffective for failing to address the inaccuracies in the sentencing guidelines score sheet.

In order to show a violation of the Sixth Amendment right to counsel, Petitioner must satisfy the two-pronged inquiry of <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). First, Petitioner must demonstrate that the attorney's performance was deficient, meaning that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id.</u> Second, Petitioner must prove prejudice, in that he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> Petitioner must prove both prongs of <u>Strickland</u>. Therefore, if Petitioner fails to establish either deficient performance or prejudice. the court need not address the other prong. <u>Id.</u> at 697 ("There is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, ... that course should be followed."); <u>Sims v. Singletary</u>, 155 F.3d 1297, 1305 (11th Cir. 1998). In this case, the state court's denial of Petitioner's

ineffective counsel claims is neither contrary to, nor an unreasonable application of, the Strickland standard.

Petitioner's allegations 1-8, 13, 14, 15, 18, 19, 21, and 22 are due to be dismissed as legally insufficient to state a claim. These allegations are conclusory, lack specific factual support, or fail to sufficiently allege prejudice. "Conclusory allegations of ineffective assistance are insufficient." Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992)(quoting United States v. Lawson, 947 F.2d 849, 853 (7th Cir. 1991). Moreover, an unsupported allegation, without more, is insufficient to establish prejudice under Strickland. United States v. Hernandez, 333 F.3d 1168, 1175 (10th Cir. 2003). See also, Hill v. Lockhart, 474 U.S. 52, 60 (1985) (concluding that petitioner's allegations were insufficient to satisfy the Strickland requirement of "prejudice"). With this principle in mind, the Court will address each of Petitioner's 22 allegations (sub-claims) of ineffective assistance of counsel:

In his first allegation, Petitioner claims his counsel should have filed a motion to suppress the BB or pellet gun that was recovered by the victim and her former father-in-law after the commission of the crimes, but he fails to offer any legal basis for suppressing this evidence and fails to show a Fourth Amendment violation. Petitioner's first allegation is due to be dismissed.

In his second allegation and in a conclusory fashion, Petitioner argues that his attorney should have filed a motion to suppress the jailhouse informant's taped statement, but he does not present any basis for suppressing such evidence. The allegation is without merit.

In his third allegation, Petitioner's contends, without providing any legal basis whatsoever, that his counsel should have sought a bond hearing or Petitioner's release on his own recognizance. Without more, this contention is wholly conclusory and is due to be dismissed for

9

facial insufficiency.

In his fourth allegation, Petitioner claims his attorney should have furnished discovery materials to him in a timely fashion, but he fails to explain how earlier access to copies of the discovery materials would have helped him or would have changed the result of the proceeding. Petitioner's claim is rejected.

Petitioner's allegations four, five, seven, and eight generally involve counsel's alleged lack of pretrial preparation, investigation, and consultation with Petitioner. A review of the record shows that defense counsel felt he had inadequate time to prepare for trial due to counsel's participation in a long-running trial in another case. Apparently, counsel would have sought a continuance in Petitioner's case, but Petitioner would not waive his speedy trial right and insisted on going to trial as scheduled despite counsel's inability to complete discovery. Prior to jury selection in the instant case, counsel made the following statement to the court:

> Judge, you may recall that we had a hearing, I don't remember the date, but it's been maybe a couple of weeks ago, when I was in the middle of a four-plus week murder trial.

> And Mr. Ashman had asked me to invoke his right to a speedy trial and -- or not to waive it, I guess, would be more accurate. Which it had been my intent, because of the trial that I was involved in.

> And you may recall that we had a hearing in which you made a colloquy with Mr. Petitioner as to the wisdom of that course of action.

> I have, since that time, been out of trial less than a week or about a week. And we have scheduled depositions of what I considered the most significant witnesses. But since the State listed, and I'm estimating here, probably 20 plus witnesses.

(V2: T 4.)

Defense counsel explained that he did not have time to depose all the witnesses and

10

Petitioner indicated to counsel that he was not happy with his defense. Counsel visited with

Petitioner in jail on Friday, before the trial, and to discuss the defense of the case. Petitioner was

given some discovery materials, but not all. Also, Petitioner had informed counsel that he had

some new information about one of the State's witnesses. (V2: T 5-6.) Counsel remarked that

he had intended to seek a continuance because of the shortness of time, but Petitioner did not

want a continuance. Petitioner agreed that this was the case. (V2: T 6.) Upon counsel's

suggestion, the court conducted a colloquy with Petitioner to determine whether he understood

the risks of proceeding to trial with inadequate time to fully prepare:

> THE COURT: So it appears to me that you and your attorney are able to communicate, the problem that you're having is the availability of time to be able to do these things, because you want to move this thing along; is that correct?
>
> THE DEFENDANT: Yes, sir, absolutely.
>
> THE COURT: And I determine that the last time that we had this type of discussion, that you were freely and knowingly and voluntarily proceeding, even though you knew that Mr. Hileman was in a murder trial, an extended murder trial, and was not going to have a great deal of time to do this?
>
> THE DEFENDANT: Absolutely.
>
> THE COURT: And you wanted to go ahead, anyway?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And you didn't want anything to slow you down?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: And you didn't want to change attorneys, you wanted to just move ahead, correct?
>
> THE DEFENDANT: Yes, sir, absolutely.
>
> THE COURT: And you still want to move ahead and what you're doing is you're

asking a great deal of your attorney by wanting to push ahead in this fashion.  And I hope you understand that.  Do you understand that you are making it more challenging than he feels he is able?

THE DEFENDANT:  Yes. sir.  So there will be no ambiguity, that is my intentions.  Thank you.

THE COURT:  Okay.  And even though he's telling you that it's more challenging than he can handle, you want to keep on with trying this case this week; is that correct?

THE DEFENDANT:  Yes, sir.  I understand the risks that are involved.

THE COURT:  All right.  We'll proceed, then.  Have a seat.

(V2: T 7-8.)  Thus, it is clear to the Court that if counsel was unable to prepare adequately for trial, it was due to Petitioner's knowing and voluntary decision to move forward swiftly, and not due to any deficiencies in counsel's performance.  These four claims are due to be dismissed.

In his fifth allegation, Petitioner claims that his counsel was ineffective for failing to investigate "key elements" contained in the discovery in order to prepare a defense strategy.  His argument is legally insufficient because he fails to allege any prejudice.

In his sixth allegation. Petitioner claims that defense counsel failed to make adequate visitations to the jail prior to trial to discuss defense strategy and prepare for trial.  This claim is also facially inadequate, because Petitioner does not specify how this alleged deficiency prejudiced him.

In his seventh allegation, Petitioner claims that his attorney should have subpoenaed potential corroborating witnesses.  The Court finds that this claim was properly dismissed without prejudice by the state postconviction court because Petitioner did not even name the witnesses or describe how their testimony would have supported his defense theory.  (See Ex. 9,

Order Denying Relief, p. 5.)  The court cited <u>Nelson v. State</u>, 29 Fla. L. Weekly S277 (Fla. June

3, 2004), which held that in order to state a facially sufficient claim that counsel was ineffective

for failing to call witnesses, the defendant must identify the witnesses, provide what their

testimony would have been, state that they were available to testify, and allege that he was

prejudiced by their absence at trial.

In his eighth allegation, Petitioner claims that counsel should have reviewed the trial

process with Petitioner, particularly the jury selection process and Petitioner's trial testimony.

However, even if such actions constituted deficient performance, Petitioner fails to demonstrate

any prejudice.  Furthermore, it should be noted that after the first round of jury selection, the

court confirmed on the record that Petitioner had an opportunity to participate with his attorney

regarding the selection of the jurors.  (V2: T 110.)

In his ninth allegation, Petitioner asserts that his counsel was ineffective for failing to

research the law on attempted felony murder.  Citing <u>State v. Gray</u>, 654 So.2d 552 (Fla.

1995), Petitioner argues that counsel should have discovered that attempted felony murder is no

longer a crime in Florida, and, therefore, the charge should have been dismissed.  Petitioner is

mistaken.  Although the Florida Supreme Court did hold in <u>Gray</u> that there is no crime of

attempted felony murder under the statutory scheme existing at that time, the state legislature

enacted a law in 1996, shortly after the <u>Gray</u> decision, making it a felony of the first degree,

punishable by life, to commit the crime of attempted felony murder.  <u>See, e.g.</u>, <u>Mitchell v. State</u>,

830 So. 2d 944, 946, n. 5 (Fla. Dist. Ct. App. 2002).  Attempted felony murder, as codified in

section 782.051(1), Florida Statutes, requires "an intentional act that is not an essential element

of the felony and that could, but does not, cause the death of another." Laws of Florida, c. 96-

359, § 1, effective October 1, 1996. Petitioner committed his crimes in December, 2002, and, therefore, the attempted felony murder statute applies to him. Accordingly, trial counsel cannot be ineffective for not seeking to dismiss the charge on that basis.

In his tenth allegation, Petitioner claims his lawyer was ineffective for making inappropriate comments to the jury during his voir dire speech. Specifically, Petitioner alleges that counsel "kept telling the jury about how bad this situation is, because we have a young woman who has obviously been through a horrible experience." Petitioner contends this remark could have led the jury to believe that he was guilty before the case had been presented. The state postconviction court denied this claim on its merits, finding that a "fair reading of the comments made by defense counsel, in the context in which they were made, shows no 'deficiency' in counsel's performance or that it 'was a substantial and serious deficiency measurably below that of competent counsel.'" (V2; R 83-110, 148-165.) Counsel briefly mentioned that this case involves a young woman "who, obviously, has been through a horrible experience." (V2: T 162.) The court added that Petitioner was unable to establish the comments were "substantial enough to demonstrate a prejudice to the defendant to the extent that there is a likelihood that the deficient conduct affected the outcome of the court proceedings." (Ex 9, Order Denying Relief, pp. 5-6.) The state court's decision was objectively reasonable.

In his eleventh allegation, Petitioner also takes issue with counsel's comment during voir dire examination that he was not sure whether his client would testify. The record of the voir dire proceeding reflects that defense counsel made the following remarks:

> DEFENSE COUNSEL: Now, in this case -- and I don't have -- but you will receive -- you know, I don't know that you have already received it, but you will receive an instruction that the Defendant has the right to testify and the right not to

testify.

And that if he chooses not to testify, you can't consider it. I anticipate. in this case, the Defendant will testify, if that's the case.

And you will be given an instruction about that by the Judge.

If that happens, do you think that you can follow those instructions to consider the Defendant's testimony just like any other witness's testimony?

And to not give it any more weight or less weight, just because he's the Defendant?

Anybody have a problem weighing the Defendant's testimony like they would weigh any other witness's in accordance with the instructions the Court gives you?

Nobody has any problem with that?

Okay. Any of you would -- any of you have a problem if the Defendant chose not to testify?

And let me define that. I mean, by a problem, you would be instructed that you're not supposed to consider what someone might have said had they testified. It applies to the Defendant, they have an absolute right not to testify.

Do any of you think you might tend to say to yourself, well, I want to hear from him, and if I don't hear from him, I just -- I just think I have to give greater weight to the State's case?

Anybody think they would do that?

Nobody thinks they have a problem setting that aside and not considering. as instructed?

(V2: T 104-105.) The trial court found that counsel's remarks were not improper. The Court

agrees. Counsel was reasonably reminding the jury that if his client chose to take the stand. then

he was to be treated as any other witness, but that Petitioner had an absolute right not to testify.

and the jury was required by law not to hold such choice against him.

15

In his twelfth allegation, Petitioner claims that trial counsel was ineffective for failing to challenge jurors Sherry Finney and Lane Dorminy. Petitioner claims that these two individuals were "unconstitutionally selected and impaneled" because Mr. Dorminy knows several law enforcement officers with the Lakeland Police Department, and his wife is a former nurse, and Ms. Finney related that her sister was raped when she was nine years old. This claim should be denied. A review of the record of the voir dire shows that Mr. Dorminy told the court that his acquaintance with police officers through his work at Lakeland Electric would not affect his ability to sit as a fair and impartial juror. (V2: T 132-133.) Ms. Finney also told the court she could put aside the fact that her sister was raped 25 years earlier. (V2: T 137-138.) Petitioner offers no evidence of any constitutional violation in the selection of those two jurors to serve on the panel. Moreover, both Mr. Dorminy and Ms. Finney assured the court that their knowledge and experiences would not affect their ability to decide the case fairly. Accordingly, Petitioner has not shown that counsel's acceptance of these two individuals constituted deficient performance or resulted in prejudice.

In his thirteenth allegation, Petitioner claims his attorney was ineffective for advising Petitioner to make admissions during his trial testimony regarding certain elements of the alleged crimes. However, Petitioner does not specify the alleged elements or admissions at issue. Consequently, this claim is due to be dismissed as facially insufficient. Moreover, even if the allegation was sufficiently pled, the record reflects that Petitioner agreed to defense counsel's trial strategy in admitting certain facts:

> DEFENSE COUNSEL: I have discussed with Mr. Ashman the defense of this case. The defense that he and I have discussed and have in mind presenting requires that we make some admissions not to the crimes themselves but

16

admissions of certain facts that obviously constitute or may constitute elements of the offense. And so I thought that we should put on the record that we're going to do that. Make sure Mr. Petitioner has not changed his mind about that. Do you understand what I'm telling the judge?

THE DEFENDANT: Yes sir.

DEFENSE COUNSEL: Okay. Is that still -- I'm going to let the judge question you.

THE COURT: All right. Mr. Petitioner, obviously what you and your attorney decide to do in your case including the things that you're going to admit in front of the jury are decisions that you have to make based on what's in your best interest. Sometimes things that you admit really help you. Sometimes they really hurt you, and sometimes you don't know whether they are going to help you or hurt you until everything is in, because a trial is a very flexible thing.

I'm not going to get involved with what the things are that you might admit or not admit. That's between you and your attorney. I just want to make sure because your attorney has indicated that you agree to these things. that this is a free and knowing and voluntary decision on your part to allow him to admit some things that would be elements of the case so that it's always clear throughout these proceedings and afterward that this was something that you understood and that there were risks involved with the decisions that are being made. Do you understand what I'm saying

THE DEFENDANT: Yes sir.

THE COURT: Okay. Have you discussed these things with your attorney?

THE DEFENDANT: Yes sir.

THE COURT: Are you comfortable with what he discussed that he's going to admit in opening statement?

THE DEFENDANT: Yes sir.

(V2: T 178-180.)

In his fourteenth allegation, Petitioner essentially argues that defense counsel was ineffective for trusting the prosecutor to instruct the State's witnesses regarding the rule of sequestration. Petitioner claims there was no proof that the Assistant State Attorney actually

followed through on her promise to instruct the witnesses.  As factual support, Petitioner alleges
that "the jailhouse informant was seen outside the courtroom discussing this case with law
enforcement officials during trial proceedings." (Dkt. 1. Petitioner's Ex. B. p. 52.)  However,
Petitioner does not describe with particularity the circumstances surrounding the incident, does
not allege that he told his attorney about the incident, and does not show how he was prejudiced.

Petitioner also asserts that counsel was ineffective for failing to suppress certain
correspondence (letters written to the victim from Petitioner).  He complains, in particular, that
there was one letter that his counsel did not have an opportunity to view prior to trial.  Not only
does Petitioner fail to state any legal basis for suppression of the documents, he fails to allege
with specificity the nature of the evidence and how it prejudiced his case.  Petitioner also claims
the letters were improperly utilized at trial in his Polk County and Orange County cases, but does
not give any legal basis for finding such evidence inadmissible.

In his sixteenth allegation, Petitioner faults his counsel for failing to object to the
prosecutor's reference to the term "stalking" in her opening statement to the jury.  Petitioner
raised this same issue in his Rule 3.850 motion as claim 12(a).  The state court denied the claim
on its merits, finding that "a fair reading of the entire opening statement refutes Defendant's
contentions of ineffectiveness and prejudice.  Specifically, an objection to the 'stalking'
comment, even if made and sustained, does not establish 'the result of the proceeding would
have been different.'"  (Ex. 9, Order Denying Relief, p. 5.)  The state court's conclusion is
objectively reasonable.  Thus, Petitioner fails to meet the requirements of 28 U.S.C. § 2254(d).

In his seventeenth allegation, Petitioner claims that his attorney was ineffective for failing
to object when the prosecutor mentioned the stalking offense during trial.  It appears this

18

allegation is procedurally barred, because it was not presented in Petitioner's Rule 3.850

proceeding in state court. New allegations of ineffective assistance of counsel which were not

presented to the state court are procedurally barred. <u>Footman v. Singletary</u>, 978 F.2d 1207, 1211

(11th Cir. 1992); <u>Jackson v. Herring</u>, 42 F.3d 1350, 1355 (11th Cir.), <u>reh. denied</u>, 51 F.3d 1052

(11th Cir. 1995).

  In his eighteenth allegation, Petitioner argues that his attorney allegedly had difficulty

reading the jury panel seating chart and often confused the names of each prospective juror.

However, he does not point to any specific occurrences, and he totally fails to demonstrate

prejudice.

  In his nineteenth allegation, Petitioner contends defense counsel was ineffective for

failing to visit Petitioner in jail while Petitioner was awaiting sentencing in order to discuss

sentencing issues. In addition, Petitioner alleges, without a specific factual basis, that his counsel

should have asked the court for leniency in sentencing. However, there is no showing

whatsoever that further discussions between Petitioner and his attorney or a request for leniency

would have changed the result of the sentencing proceeding.

  In his twentieth allegation, Petitioner next asserts defense counsel should have cross-

examined State witness Mary Fortner regarding her improper handling of forensic evidence.

Specifically, Petitioner points out that Ms. Fortner could not recall the name of the law

enforcement officer to whom she submitted vaginal swabs obtained from the victim. The state

court properly rejected this claim for lack of merit. The record reveals that defense counsel

did briefly cross-examine the witness. (V3: T 268-269.) However, it appeared from her

testimony that the witness had followed prescribed procedure when collecting the evidence, and

the fact that she could not recall the investigating detective's name is of no significance. (V3: T 334-335.) There was no indication in the record that the evidence had been tampered with or the chain of custody compromised. (Id.) The swabs were sealed and correctly marked when received by the DNA lab for analysis. (Id.)

In his twenty-first allegation, Petitioner alleges that trial counsel was ineffective for failing to view photographs prior to their introduction at trial. Petitioner offers only conclusory or speculative argument that counsel would have been better prepared had he viewed certain evidence prior to trial and he does not explain how the alleged deficiency prejudiced him.

In his twenty-second allegation, Petitioner complains that his defense counsel was ineffective for failing to address the inaccuracies in the presentence investigation report. Petitioner raised this issue in the Rule 3.850 motion in a conclusory manner, with no factual support, and does the same here. In addition, Petitioner alleges his counsel was remiss for not pointing out an error in the Criminal Punishment Code score sheet -- he complains that the score sheet should have reflected there were five sexual battery counts, rather than four. (Dkt. 1, Petitioner's Ex. B, pp. 65-66.) Respondent cannot determine, nor has Petitioner explained, how this error was prejudicial to him.

### Ground Four

In Ground Four, Petitioner asserts that the trial court lacked jurisdiction to enter judgment or impose the sentence. An examination of Petitioner's exhibits reveals that this ground essentially challenges the sufficiency of the evidence to support each of the convictions. (Dkt. 1, Ex. D, pp. 72-133.) Petitioner's claim is procedurally barred because these issues were not raised on direct appeal in state court.

## Ground Six

Petitioner claims in Ground Six that his conviction was obtained in violation of the protection against double jeopardy. He raised this same issue in his Rule 3.850 motion, with several sub-claims. The state court denied all but one sub-claim for lack of legal merit. The gist of Petitioner's argument in the remaining sub-claim was that he should not have been convicted in both Orange and Polk Counties on the same charges for the same transaction, for the same cause resulting in multiple convictions for the same offense. The trial court dismissed this sub-claim without prejudice, stating in the order denying relief that:

> the Court finds that, because Polk County conducted the first trial (and received the first verdicts) on the issues, any claim of double jeopardy legally lies with the Orange County cases. Therefore, Defendant's Claim 4(c) is DISMISSED without prejudice to raise such argument with the appropriate Orange county court.

(See Ex. 9, Order Denying Relief, p. 5)(emphasis in original). Thereafter, Petitioner sought, and successfully obtained, relief in Orange County, as suggested by the Polk County judge in the order denying relief. (Ex. 13). See Ashman v. State, 886 So.2d 1079 (Fla. Dist. Ct. App. 2004). where the Fifth District appellate court, based on double jeopardy considerations, reversed Petitioner's two Orange County kidnapping convictions and remanded for resentencing. Petitioner's remaining convictions in Orange County for armed burglary of a dwelling and aggravated stalking. which were not prosecuted in Polk County. were affirmed. Id. at 1081. Because Petitioner was afforded relief on this claim. Ground Six will be denied.

## Ground Seven

As his last ground. Petitioner contends that the prosecutor in his Polk County trial violated his constitutional rights by utilizing evidence obtained in the first trial in the subsequent Orange County case. In his Rule 3.850 motion, Petitioner presented this claim as "collateral estoppel." The state court summarily denied this ground for lack of legal merit. (See Ex. 9, p. 4). Petitioner is not entitled to relief because he has stated no legal basis for finding any impropriety in the admission of the same evidence in both trials.

ACCORDINGLY, it is ORDERED AND ADJUDGED:

Petitioner's petition for writ of habeas corpus (dkt. 1), filed pursuant to 28 U.S.C. § 2254, is DENIED. The Clerk is directed to enter judgment in favor of Respondent and against Petitioner, terminate any pending motions, and close this case.

DONE AND ORDERED at Tampa, Florida, on January 20, 2006.

RICHARD A. LAZZARA
UNITED STATES DISTRICT JUDGE

COPIES FURNISHED TO:
Pro se Petitioner
Counsel of Record

22